<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KRISTEN G. GARDA,<br><br>             Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Civil Action No. 20-6525 (ZNQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

Kristen G. Garda ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Defendant"), denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).  The Court has considered the parties' submissions and the Administrative Record, without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 9.1(f).  For the reasons set forth herein, the Commissioner's decision will be AFFIRMED.

**I.**  **<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>**

On March 4, 2014, Plaintiff applied for DIB, alleging disability as of August 10, 2013. ("A.R.", ECF No. 7 at 48.)  Plaintiff was denied disability benefits initially and again on reconsideration.  She then requested a hearing before an Administrative Law Judge ("ALJ") to review the application *de novo*, which occurred on June 24, 2016, before ALJ Leah Farrell.  (A.R. 43–88.)

ALJ Farrell denied DIB at step five of the sequential evaluation because Plaintiff could perform other work.  (*Id*.)  She then sought Appeals Council review, and on November 22, 2017,

the Appeals Council concluded there were no grounds for review.  (Pl. Moving Br. at 2.)  On January 26, 2018, Plaintiff filed suit in this Court.  (*Id*.)  On July 24, 2018, that matter concluded with a Consent Order to Remand, which was filed by the Commissioner and signed by the Honorable Jose L.  Linares, U.S.D.J.  (*Id*.)

On January 16, 2019, the Commissioner vacated the previous ALJ decision for failures in the adjudication of step 3, the Residual Functional Capacity (RFC), and pain evaluation.  (*Id*.)  On May 31, 2019, ALJ Ricardy Damille held the hearing, and on December 10, 2019, he denied Plaintiff disability benefits at step five of the sequential evaluation.  (Pl. Moving Br. at 3.)  Plaintiff then again commenced action towards the instant appeal on May 29, 2020, filed the Administrative Record on December 10, 2020, and filed her Statement of Contentions on January 15, 2021.  (*Id*.)

### A.  Review of Medical Evidence

#### 1. Review of Physical Health Evidence

The record establishes Plaintiff's history of fibromyalgia since she was fifteen years old. More recently, she received an explicit diagnosis on November 6, 2013, by Dr. Nashaat Morgan, MD.  (A.R. 261, 287, 657.)  Plaintiff was prescribed a muscle relaxer by her primary care physician, Dr.  Harleen Kaur, MD, and referred to physical therapy at A & A Physical Therapy Associates, Inc., where she had already been receiving treatment for her chronic back pain for about seven years.  (*Id*. 285, 657.)  Plaintiff also underwent therapy for her temporomandibular joint disorder ("TMJD") in February and March 2014.  (*Id.* at 267–285.)

In October 2014, Dr. Kaur, referred her to Neurosurgery at RWJMG University Neurosurgical Associates to evaluate her chronic leg, back, and head pain.  (*Id.* at 356.)  Plaintiff also received an MRI of her lumbosacral spine, revealing a congenital, foraminal stenosis, and nerve root compression caused by a spinal disk bulge.  (*Id.* at 353.)  On December 8, 2014,

Plaintiff's neurosurgeon recommended a discectomy surgery; however, Plaintiff called to cancel the procedure on January 7, 2015. (*Id.* at 353, 356–57.)

Plaintiff has also had chronic abdominal pain, history of irritable bowel syndrome ("IBS"), and colitis, for which she has taken several medications that provided her with no relief. (*Id.* at 415.) On April 29, 2015, Plaintiff underwent a gastroscope procedure, a colonoscopy, and a biopsy that revealed mild chronic inflammation of the gastrointestinal tract but was otherwise normal. (*Id.* at 433, 438.) She also underwent an endoscopy on the same day, which revealed moderate gastritis and colitis. (*Id.* at 434–35.)

To manage pain, Plaintiff underwent epidural injections, cortisone injections, radiofrequency therapy, and other pain therapies during 2015. (*Id.* at 438.) She visited Dr. Choi several times in 2015 for epidural injections, which helped Plaintiff to some extent. (*Id.* at 438, 440, 442, 444, 446, 448, 450, 452, 455.) Plaintiff was referred to A&A Pain Management by Dr. Choi for physiotherapy starting April 2016; a provider note shows that she attended one session, but the record does not indicate whether she attended subsequent sessions. (*Id.* at 470–474.) On a note from May 2, 2016, Dr. Kaur noted that Plaintiff's pain management consultant and rheumatologist had treated her fibromyalgia as much as they could and stated that her only options were infusions and biofeedback (which her insurance does not cover). (*Id.* at 583.)

At a gynecologist visit on Jan 3, 2017, Dr. Han noted that Plaintiff did not take her fibromyalgia medication because it allegedly did not help; a note by Dr. Cho on Mar 6, 2017 reported the same. (*Id.* at 1253, 1298.) In the same visit to Dr. Cho, the Plaintiff reported that therapy helped significantly. (*Id.* at 1298.)

*2. Review of Mental Health Evidence*

3

The record establishes Plaintiff has been diagnosed and been treated for Chronic Post Traumatic Stress Disorder ("PTSD") from prior abuse, and depression caused by fibromyalgia at Raritan Bay Mental Health Center on April 11, 2014.  (*Id.* at 291, 305.)  Plaintiff's records highlighted her family history of substance abuse, her lack of substance abuse, prior trauma and abuse, and her feelings of depression and anxiety.  (*Id*. at 291–304.)  Dr. Kaur referred her again to Raritan Bay Mental Health Center, and she received treatment for her PTSD, depression, and anxiety on June 5, 2015.  (*Id.* at 352.)  At that time, Plaintiff was prescribed a depression and anxiety medication, Cymbalta, to take daily for two months.  (*Id*.)  Plaintiff also began seeing a therapist, Dr. Annamarie Resnikoff, on June 10, 2014, and was evaluated for depression and anxiety.  (*Id.* at 326.)

Plaintiff received an updated psychiatric assessment at Centrastate Medical Center on July 20, 2015, with Dr. Marianna Kiselev.  (*Id.* at 360.)  The treatment plan provided that she begin taking Minipress to help with high blood pressure caused by stress.  (*Id.*) For her anxiety and depression, she was recommended to increase her Prozac dose and take Ambien.  (*Id.*)  It was also recommended that Plaintiff stay in the hospital for a few days, but she declined.  (*Id.*)

On September 8, 2015, Plaintiff saw Dr. Veena Dube at George J. Otlowski, Sr. Center for Mental Health Care.  (*Id.* at 368.) The medical records from this visit state that Plaintiff reported that she felt less anxious after taking Prozac and that her mood had more stabilized.  (*Id.*)

By the time of this appeal, Plaintiff alleged nine physical and mental impairments, including fibromyalgia, anxiety, depression, and degenerative disc disease.  (A.R. 847; Pl. Moving Br. at 18 n.6.)

### B.  Review of Testimonial Record

*1.Plaintiff's Testimony*

4

Plaintiff did not testify at the hearing on December 10, 2019; however, she did testify on May 31, 2019. (A.R. 741.) Plaintiff testified that she is a high school graduate and worked as a receptionist. (*Id.* at 749.) Plaintiff stated her bodyweight reached 225lbs in 2013; Plaintiff claimed she became disabled in August 2013. (A.R. 748, 760.) Plaintiff asserted that she currently weighs 150lbs. (*Id.* at 748, 760.) Plaintiff discussed her physical health issues, mental health issues, and her treatment plans for both. (*Id.* at 748-73.)

Plaintiff testified that her physical pain and discomfort was caused by TMJ, migraines, vertigo, fibromyalgia, herniated discs, and IBS. (*Id.*) She also experienced frequent dizzy spells and headaches caused by TMJ, migraines, and vertigo. (*Id.* at 749-52.) Plaintiff described her headaches and dizziness as making her head feel like it was "cracking," and that she could not focus at work. (*Id.* at 749.) Plaintiff also said that she experienced numbness and pain in her leg caused by fibromyalgia. (*Id.* at 752.) She claimed that physical therapy, prescription drugs, and acupuncture did not provide her adequate relief and that her rheumatologist said there was nothing else left for her to do. (*Id.* at 751-53.) Plaintiff elaborated that the pain in her legs, back, and neck was persistent and caused her fatigue. (*Id.* at 752.) Plaintiff claimed that the pain in her lower back is from a herniated disc and alleged that she declined surgery for it because her rheumatologist said it might worsen her fibromyalgia. (*Id.* at 756.) Plaintiff testified that she experienced constant nausea and frequent diarrhea caused by her IBS, especially during her menstrual cycle due to her Premenstrual Dysphoric Disorder ("PMDD"). (*Id.* at 761–62.)

Plaintiff testified that her physical health issues give her difficulty standing and walking, and she is only able to do physical work in increments of 10 minutes until she must go lay down. (*Id.* at 755, 768.) Plaintiff also said that sitting for over 10 minutes at a time makes her back pain unbearable until she must lay down or walk around to relieve some of the pain. (*Id.* at 771-72.)

Plaintiff claimed that she cannot focus on anything other than the pain when she is sitting and has difficulty moving or packing things in a box.  (*Id.* at 773.)

Plaintiff also testified that the pain and fatigue associated with all her symptoms affect her mental health as well.  (*Id.*)  Plaintiff reported a history of substance abuse that caused her anxiety.  (*Id.* at 763.)  Plaintiff claims she sought psychiatric treatment for her anxiety in 2014 but said it did not work.  (*Id.*)  Plaintiff testified that she continues to go to therapy, hoping it will help.  (*Id.* at 764.)  Plaintiff also testified that smoking medicinal marijuana is the only thing that relieves her excessive worrying, but then she cannot focus.  (*Id.* at 766.)  Plaintiff also testified that her anxiety worsens during her period due to her PMDD.  (*Id.*)  Plaintiff explains that her constant anxiety drains her energy, and she cannot do anything the rest of the day.  (*Id.*)  Plaintiff claims that days after doing activities, such as traveling, she must sleep the whole next day.  (*Id.*)

### 2. Vocational Expert's Testimony

Brian Daly, a vocational expert, also testified at the May 31, 2019, and December 10, 2019 hearings.  (*Id.* at 715.)  The ALJ asked Daly what the definition of low-stress work is, and Daly testified that, in vocational terms, it is a job that does not require a lot of information or tasks.  (*Id.* at 716.)  Daly cited that mail routers and hand packagers are both production jobs that are considered low stress.  (*Id.* at 717.)  The ALJ then asked if missing one day a month would be acceptable for an entry-level employee, to which Daly testified that it would not be for some, but it depends on the employer, and some jobs will allow absences as long as someone else can cover the shift.  (*Id.* at 718–19.)  Daly cited document preparer, tube operator, and table worker as sedentary jobs that are low stress.  (*Id.* at 720, 723.)

The ALJ then asked about sitting and standing in these occupations and how it would affect production levels.  (*Id.* at 725.)  Daly responded that the option is available as long as employees

meet the production levels required for the specific job.  (*Id.*)  The ALJ proceeded to ask about the amount of time spent "stooping" at these jobs, and Daly responded that it would be less than one-third of the day.  (*Id.* at 728–29.)  Additionally, in response to questioning from Plaintiff's attorney, Daly contended that workers could not be off task for more than 10% of a given workday.  (*Id.* at 729.)

### C.  The ALJ's Findings

The ALJ issued a written decision on February 11, 2020, determining that the claimant has not been disabled, as defined by the Act, from August 10, 2013, until last insured on December 31, 2017.  (*Id.* at 703.)  The ALJ evaluated Plaintiff's case under the Commissioner's five-step sequential evaluation process.  (*Id.* at 688–89.)  The ALJ found that Plaintiff met the insured status requirements of the Social Security act on December 31, 2017.  (*Id.* at 690.)

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from the alleged onset date of August 10, 2013, through her date last insured of December 31, 2017.  (*Id.*)

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine[1], fibromyalgia, vertigo, migraines, premenstrual dysphoric disorder, obesity, anxiety, depression, and posttraumatic stress disorder (PTSD).  (*Id.* at 690–91.)  The ALJ found that, in addition to these severe impairments that significantly limit the ability to perform basic work activities as required by the Act, Plaintiff has a history of non-severe impairments, including IBS, colitis, and TMJ.  (*Id.* at 691.)  The ALJ concluded that Plaintiff's IBS and colitis were not severe because the conditions were managed medically, and imaging studies were normal.  (*Id.*)  Plaintiff's TMJ was found to be not severe

---

[1] Plaintiff separates her disc disease into two separate impairments without rationale in her brief.  (Pl. Moving Br. at 18 n. 6.)

because Plaintiff did not show any notable complaints of pain or treatment issues after undergoing physical therapy in February and March 2014. (*Id.*)

At step three, the ALJ found that Plaintiff's impairments and combinations of impairments were not medically equivalent in severity to those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). (*Id.* at 691); Determining Disability, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Before considering step four, the ALJ evaluated Plaintiff's Residual Functional Capacity (RFC). (*Id.* at 692); 20 C.F.R. § 404.1520(e). The ALJ found that despite Plaintiff's impairments, she could perform sedentary physical and mental activities on a sustained basis. (*Id.* at 692); 20 C.F.R. § 404.1567(a). Specifically, the ALJ determined her RFC as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except she can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel but never crouch or crawl. She must be afforded the option to alternate from sitting to standing so long as she is not off task for more than 10% of the workday above normal breaks. She must avoid concentrated exposure to hazards such as machinery and heights and is restricted to a work environment with no more than a moderate noise level. She is able to understand, remember and carry out simple instructions. She is restricted to low stress work which is defined as involving few if any work place changes and occasional decision making. The work must be free of fast pace production. Fast pace is defined as assembly line work. She can have occasional interaction with supervisors, coworkers and the public.

(A.R. 694.) In making this finding, the ALJ considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence. (*Id.*) The ALJ determined that Plaintiff's symptoms and alleged intensity are not consistent with the objective medical evidence and other evidence in the record. (*Id.* at 695.)

Based on this RFC finding, the ALJ determined that Plaintiff could not perform her past relevant work as a Receptionist and Bank Teller because the exertional demands and skill level required exceeded Plaintiff's RFC.  (*Id.* at 701–702.)  Nonetheless, the ALJ considered Plaintiff's age, RFC, education, and work experience and found that a significant number of jobs existed in the national economy that Plaintiff can still perform.  (*Id.*)  Also relying on the vocational expert's testimony that Plaintiff could perform occupations such as document preparer, table worker, and tube operator, the ALJ ultimately determined that Plaintiff was not disabled at any time from the alleged onset date, August 10, 2013, to the date last insured, December 31, 2017.  (*Id.* at 703); 20 C.F.R. § 404.1520(g).

## II.   LEGAL STANDARD

### A.  Standard of Review

Upon reviewing the final decision of a Social Security Act claim, the district courts "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  If the Court finds that the Commissioner's decisions are supported by "substantial evidence" in the administrative record, the decisions are deemed conclusive.  42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" is defined as "more than a mere scintilla" but less than a preponderance.  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence."  *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir 1983)).  Because a reviewing court may not weigh the evidence or substitute conclusions from the factfinder, the previous decision will be upheld even if there is contrary evidence in the record. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).

The Court is required to "review the record as a whole" in its analysis to determine whether substantial evidence supports a factual finding. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).  If the ALJ rejected the evidence, the Court is to review the ALJ's explanation of the reason why probative evidence was rejected to determine whether the reasons for rejection were improper. *Villanueva v. Commissioner of Social Security*, Civ. No. 19-16634, 2020 WL 6384198, at *2 (D.N.J. Oct. 30, 2020) (citing *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981)).  Additionally, the Court must determine whether the ALJ applied correct legal standards. *Newton v. Commissioner of Social Security*, Civ. No. 18-751, 2019 WL 1417248, at *2 (D.N.J. March 29, 2019) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## B.  Establishing Disability

To establish disability, a claimant must be unable to engage in substantial gainful activity for medical reasons, physical or mental, that can be expected to result in death or twelve months of impairment.  42 U.S.C. § 423(d)(1)(A).[2]  Under the Act, an individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[2] An alternative mechanism to establishing disability for an individual who is at least fifty-five years of age and blind is establishing the "inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time." 42 U.S.C. § 423(d)(1)(B).  This alternative is not applicable in this case.

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).   Physical or mental impairment can result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Act outlines a five-step sequential process for the ALJ to make their determination. *See* 20 C.F.R. § 404.1520.  If a claimant is determined disabled or not disabled at a step, the ALJ is permitted to issue a decision without advancing to the next step.  20 C.F.R. § 404.1520(a)(4).  If the ALJ cannot find claimant disabled or not disabled, the analysis proceeds to the next step.  20 C.F.R. § 404.1520(a)(4).

Step one considers work activity.  20 C.F.R. § 404.1520(a)(4)(i).  A claimant cannot be currently engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, they are considered not disabled, and are denied benefits regardless of medical conditions, age, education, and work experience.  20 C.F.R. § 404.1520(c).  Otherwise, the analysis proceeds to step two.  20 C.F.R. § 404.1520(a)(4).

Step two considers the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If a claimant is without "severe impairment or combination of impairments" that significantly limit their ability to do "basic work activities," the ALJ will find the claimant not disabled.[3]  *Id.*  The Act defines "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* § 404.1522(b).  If the claimant does not satisfy this step, they are denied benefits. *Id.* § 404.1520(c).  Otherwise, the analysis proceeds to step three.  *Id*; § 404.1520(a)(4).

---

[3] The severe medically determinable physical or mental impairment must also meet the duration requirement in § 404.1509.  20 C.F.R. § 404.1520(a)(4)(ii).

Step three further considers the medical severity of the claimant's physical and mental impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant's severe impairment or combination of impairments must meet or equal the ones listed in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii).[4] A combination of impairments may be medically equivalent to a listing if the Commissioner can find a listed impairment of equal medical significance as the combination and the combination is medically severe. C.F.R. §§ 404.1523(c), 1526(b)(3). A claimant meeting these criteria will be found disabled without requiring consideration of their age, education, and work experience. *Id*. § 404.1520(d). If the claimant does not meet step three, the ALJ must assess their residual functional capacity (RFC). *Id*. § 404.1520(e).

Step four considers the claimant's RFC and past relevant work.[5] *Id*. at § 404.1520(a)(4)(iv). If the claimant can prove the impairment prevents them from doing past relevant work, they are considered disabled and granted benefits. 20 C.F.R. § 404.1520(f); *Yuckert*, 482 U.S. at 141.

Step five considers the claimant's ability to adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner must prove whether the claimant retains the ability to perform "work available in the national economy." 20 C.F.R. § 404.1566; *Hankerson v. Commissioner of Social Sec.*, Civ. No. 13–6793, 2015 WL 4064671, at *3 (D.N.J. July 1, 2015). Here, the ALJ incorporates step four's RFC assessment with the claimant's age, education, and work experience to assess whether the claimant can adjust to other work. 20 C.F.R. §§

---

[4] List of Appendix 1 impairments include Low Birth Weight and Failure to Thrive, Musculoskeletal System, Special Senses and Speech, Respiratory Disorders, Cardiovascular System, Digestive System, Genitourinary Disorders, Hematological Disorders, Skin Disorders, Endocrine Disorders, Congenital Disorders That Affect Multiple Body Systems, Neurological Disorders, Mental Disorders, Cancer (Malignant Neoplastic Diseases), and Immune System Disorders. 20 C.F.R. Pt. 404, Subpt. P., App. 1.

[5] ALJ's are permitted to expedite the sequential process and proceed to step five if claimant is not disabled at the third step, and there is insufficient evidence about claimant's past relevant work to make a finding at the fourth step. 20 C.F.R. § 404.1520(h).

404.1520(a)(4)(v), 1560(c).  If the ALJ finds the claimant can adjust to other work, the claimant is determined to be not disabled.  *Id.*  If the claimant is found not able to make an adjustment to other work, the claimant is determined to be disabled and is awarded benefits.  20 C.F.R. § 404.1520(a)(4)(v).

Through the first four steps, "the burden of persuasion rests with the claimant." *Villanueva*, 2020 WL 6384198, at *3 (citing *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009)).  At the fifth step, the burden shifts to the Commissioner to "demonstrate that the claimant can perform other work that is consistent with his medical impairments, age, education, past work experience, and [residual function capacity]." *Villanueva*, 2020 WL 6384198, at *3 (citing 20 C.F.R. § 404.1520(g)).  If the Commissioner fails to meet the burden, claimant will receive Social Security benefits.  *Id*.

## III.   **DISCUSSION**

Plaintiff raises two issues on appeal: (A) the ALJ's step three listings analysis does not consider the medical equivalence of Plaintiff's ten severe impairments in combination; and (B) the RFC is not based on substantial evidence or record and is offered without supporting rationale. (Pl. Moving Br. at 12, 22.)  Because Plaintiff does not raise specific issues with the ALJ's mental determinations, the Court will only consider such findings as needed to determine the combination of Plaintiff's impairments. Furthermore, the Court will not discuss whether the ALJ's decision was contrary to the Appeals Council Remand Order because the Court may only "enter a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.".  42 U.S.C. § 405(g); *see Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir. 1993) ("Section 205(g) creates a scheme in which a district court may conduct

a restricted review of the Secretary's findings and may remand a case for new findings, but this scheme makes no provision for a district court to make any findings of its own.").

### A.  The ALJ's Step Three Analysis of Impairments

Plaintiff argues that the administrative decision did not include a medical equivalence discussion of the Plaintiff's combined impairments to a listed impairment.  (Pl. Moving Br. at 11–12.)  In particular, Plaintiff raises her degenerative disc disease, obesity, and fibromyalgia as improperly analyzed under step three.  (Pl. Moving Br. at 18–21.)  According to Plaintiff, the ALJ analyzed each impairment in isolation without considering the combination of impairments for medical equivalence reasons at step three of the sequential evaluation.  (Pl. Moving Br. at 13, 17.)  Citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009), Plaintiff argues that the ALJ stated conclusory statements without analysis, which led to an insufficient discussion of the combination of Plaintiff's impairments to create a record for review.  (Pl. Moving Br. at 18–21.)  To prove this point, Plaintiff points to: (1) the ALJ's decision that her "multilevel disc disease in both the cervical and lumbar spines" was not found to meet a listing in Appendix 1 because "a straight leg raising test was negative and plaintiff wasn't limping anymore"; (2) the ALJ's statement that the "cumulative effects of the claimant's obesity are mild", which Plaintiff alleges has no support; and (3) the ALJ's apparently conclusory statements that a fibromyalgia evaluation was undertaken.  (*Id.* at 16, 17, 21; A.R. 691–692.)

In response, Defendant argues that the listings found in 20 C.F.R. pt 404, subpt. P., app. 1 ("Listing") are a regulatory device to determine whether a claimant is presumptively disabled.  (Def. Reply at 5.)  Defendant iterates that the claimant bears the burden of proof at this point.  (*Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).  Defendant argues that the ALJ does not need to "use a particular language or adhere to a particular format": if the ALJ has indicated that

the impairments have been considered in combination, there is "no reason not to believe that" the ALJ did so.  (Def. Reply at 5 (citations omitted).)  Defendant then points to the evidence the ALJ considered in his opinion, including the opinions of the four state agency medical experts.  (Id. at 6.)  Defendant further argues that Plaintiff does not demonstrate harmful legal error that required remand.  (Id. at 7.)  To argue that the ALJ properly developed the record for review, Defendant points to specific parts of the ALJ's decision that demonstrate that the ALJ considered fibromyalgia and obesity in combination.  (Id. at 8–9.)

The substantial evidence standard requires that the court find the record "compels" it to override the agency's factual finding. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n. 1 (1992); *see Burnett v. Comm'r of SSA*, 220 F.3d 112, 119 (3d Cir. 2000); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  A plaintiff must establish their impairment by objective medical evidence from an acceptable medical source; a mere compilation of symptoms, diagnosis, or medical opinion to establish the existence of an impairment is insufficient.  20 C.F.R. §§ 404.1521, 1526(a).  *Diaz* requires that the ALJ discuss the combined effect of a claimant's impairments.  577 F.3d at 504; *see Morris v. Commissioner of Soc. Sec.*, 2020 WL 6580778, at *3 (D.N.J. Nov. 10, 2020).  On appeal, a plaintiff must deal with the harmless error doctrine and show that an error is harmful and affects the outcome of the decision.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016).

### (i) Degenerative Disc Disease

In the findings of fact and conclusions of law, the ALJ stated that he "considered all of the claimant's severe and non-severe impairments in determining the claimant's [RFC]."  (A.R. 691.)  The ALJ considered whether the claimant's degenerative disc disease met Listing 1.04[6] by

---

[6] Degenerative Disc Disease is evaluated as a disorder of the skeletal spine resulting in compromise of a nerve root(s).

reviewing the record for a compromise of a nerve root or the spinal cord with certain other findings. (A.R. 691.); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 1.04 includes disorders of the skeletal spine or of the upper or lower extremities that affect musculoskeletal functioning and generally requires the disorder to compromise a nerve root, as well as some serious effect on physical function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, (F)(1), (2). After reviewing the record, the ALJ found "little evidence of muscle atrophy or weakness, limited range of motion, antalgic gait, or positive straight leg raise," as required to qualify under the listing. (A.R. 280, 314, 386, 443, 447, 449, 453, 456, 461, 465, 540, 653, 675, 691, 1136, 1158–1190.)

The record shows that Plaintiff did have a compressed nerve and a positive straight leg test, as indicated by her examination by Dr. Nosko on Dec. 8, 2014; in particular, Dr. Nosko noted that her disk bulge "compromise[d] her foramina and cause[d] nerve root compression." (A.R. 353.) Furthermore, in a medical examination completed on Sept. 29, 2016, Dr. John Cho noted the disc herniation and a nerve root displacement. (A.R. 1310.) Yet, physical examinations conducted by Drs. Kaur, Cho, and the state medical agency experts showed negative straight leg tests on Aug. 22, 2016, September 19, 2016, Dec. 1, 2016, and Mar. 6, 2017. (A.R. 1299, 1302, 1304, 1308.) Moreover, Plaintiff did not have any remarkable results on nerve conduction studies on Mar. 4, Sept. 8 and Nov. 26, 2014. (A.R. 1092–98)

### (ii) Obesity

Obesity is no longer a listing in Appendix 1. SSR 19-2p. However, obesity may be a medically determinable impairment ("MDI") when it is established by objective medical evidence from an acceptable medical source. SSR 19-2p. Once established as an MDI, obesity may be classified as a severe impairment "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities."

*Id.* To determine the severity of obesity, the Commissioner performs an individualized assessment of its effect on a person's functioning to determine whether it increases the severity of coexisting or related impairment(s) to the extent that the combination medically equals a listing. *Id.*

In this case, Plaintiff argues that the ALJ did not consider her obesity in combination with the ten other impairments she has, including fibromyalgia. (Pl. Moving Br. at 18; A.R. 847.) In *Woodson*, the plaintiff, as in this case, believed the ALJ's decision to be incorrect because the ALJ did not adequately consider his obesity in combination with his other impairments. 661 F. App'x 762, 765 (3d Cir. 2016). The ALJ found Woodson to not be disabled at step three because he did not find his impairments, although severe, satisfy the requirements of a Listing. *Id* at 764–65. On appeal to the District Court, Woodson argued that the Commissioner's step three finding is beyond judicial review because the ALJ's analysis was merely "mentally assessed" and did not include explicit discussion of how the combination of his impairments could equal a Listing. *Id* at 765. The District Court ruled for the Commissioner because "(1) Woodson failed to deal with his burden of proof at the first four steps of the evaluation process, and (2) h[e failed] to address the harmless error doctrine." *Id.* Woodson advanced the same arguments to the Third Circuit. *Id.* at 764–65. The Third Circuit affirmed the District Court's decision by pointing to specific instances of the ALJ's discussion of his obesity within the context of the overall record, the lack of specific evidence Woodson puts forward that his obesity would exacerbate other impairments, and vague statements that the deficiency was harmful to his claims. *Id.* at 765–766.

Plaintiff argues that the ALJ's statements, "cumulative effects of the claimant's obesity are mild" and the "combined effects of her obesity with her musculoskeletal impairments do not meet the criteria of the listing," do not supply sufficient analysis. (Pl. Moving Br. at 17–18.) However, Plaintiff also does not supply an argument on how obesity may cause her impairments to rise to

the level of medical severity required. Although the ALJ found the obesity to be severe, it did not

meet the criteria of the listing even when combined with other impairments. (A.R. 692.) The

Court finds it important to note that Plaintiff's medical records indicate a history of obesity. (A.R.

260, 309, 386, 400, 438, 1248.) Moreover, no medical professional has directly attributed

Plaintiff's obesity with exacerbating any of her conditions. (*Id.*) As Plaintiff testified, she can

perform basic tasks, albeit with difficulty; because of the multitude of impairments: Plaintiff's

obesity seems to affect her abilities and aptitude only marginally. (A.R. 880 – 884.) As such, the

Court finds substantial evidence that the ALJ's findings are correct because a reasonable mind

would find that Plaintiff's obesity minimally affected her ability to perform basic activities.[7] *See*

*Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

### (iii) Fibromyalgia

Because various providers could not specifically attribute claimant's symptoms to

fibromyalgia, the ALJ "considered all myalgia and arthralgia-type pain complaints collectively."

(A.R. 696.) Like obesity, fibromyalgia is not a listed impairment in Appendix 1. (A.R. 692.); 20

C.F.R. Part 404, Subpt. P, App. 1. As such, it must be medically equivalent to a listing on its own

---

[7] The Court notes that the quality of the obesity analysis plays an important part in determining whether the ALJ performed his duty faithfully. Plaintiff relies heavily on Diaz to assert that the ALJ did not consider her obesity in combination with her impairments. (Pl. Moving Br. at 18, 19, 21.) The Third Circuit stated that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three, and at every subsequent step." Diaz, 577 F.3d at 504. The Third Circuit overturned the District Court's decision because it erroneously determined that "the ALJ's citations of reports by doctors who were aware of Diaz's obesity sufficed" for consideration of Diaz's obesity. Id. The Third Circuit noted that the ALJ did not directly reference Diaz's obesity beyond these citations. Id. Moreover, in *Padilla v. Astrue*, 2011 WL 6303248, at *7 (D.N.J. 2011), the District Court found that the ALJ's *two sentence* obesity analysis did not allow the court: (1) to determine whether the ALJ meaningfully considered the combined effect of the claimant's obesity with the other severe impairments; (2) to consider the reasons for the ALJ's decision; and (3) to meaningfully review the decision. Yet, in *Morris*, the Court found that the ALJ's *seven-sentence* consideration of Claimant's obesity, "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity", and explicit discussion of how obesity may affect other impairments had substantial evidence. *See* 2020 WL 6580778, at *2. As noted, the Court finds that the longevity of the impairment, along with the lack of medical support that the obesity severely impaired Plaintiff, provide substantial evidence for the ALJ's findings.

or through a combination with another severe impairment. *Id.* As understood by the Court, fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep memory, and mood issues.[8] The ALJ compared fibromyalgia to inflammatory arthritis (listing 14.09D in Appendix 1) because fibromyalgia is considered a type of arthritis.[9] *Id.* Listing 14.09D requires "repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and [a marked level of] limit[s] of activities of daily living, limit[s] in maintaining social functioning, [or] limit[s] in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." Id.  A marked limitation means that the signs and symptoms of an immune system disorder interfere seriously with a person's ability to function.[10]

### (iv) Harmless Error

The party attacking the agency's determination holds the burden of showing that an error is harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). To show an error is harmful, the party must prove that the error, if considered, would yield a different result. *Id.* Here, Plaintiff's only reference to the harmless error doctrine is to conclude that the ALJ's alleged conclusory findings are "anything but 'harmless errors.'"  (Pl. Moving Br. at 21.)  As such, not only has Plaintiff failed to prove that the error was harmful, she has not even made it clear whether she is posing the argument. Notwithstanding, the Court finds that the error is harmless; even if Plaintiff proffered such an argument, the Court finds that the substantial evidence proving the absence of a consistent

---

[8] Mayo Clinic, "Fibromyalgia", https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.
[9] The Court notes that the CDC lists fibromyalgia as a type of arthritis. *See* https://www.cdc.gov/arthritis/basics/fibromyalgia.htm.
[10] Although the SSA does not require the use of a scale, it classifies "marked" as the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. 20 C.F.R. Part 404, Subpt. P, App. 1 §14.09(I)(4)–(5).

positive straight leg test, the reasonableness of the ALJ's obesity analysis, and the general deference to the Commissioner's determinations support a conclusion of harmless error.

Accordingly, the Court concludes that the ALJ's determination at step three is based on substantial evidence in the record because a reasonable mind would accept the evidence above as adequate. *See Plummer*, 186 F.3d at 427; *Woodson*, 661 F. App'x at 765. Even if it is not, Plaintiff has not satisfied her burden of proving that any alleged errors were harmless.

### B.   The ALJ's RFC Finding

Second, Plaintiff contends that the ALJ's RFC finding is not based on substantial evidence from the record and is offered without supporting rationale. (Pl. Moving Br. at 22.) Plaintiff's argument relies on three primary points: (1) the ALJ did not clearly explain his rationale in the RFC assessment; (2) the ALJ improperly relied on the VE's testimony; and (3) the ALJ did not properly consider the Plaintiff's subjective testimony. (A.R. 22–38.) First, Plaintiff argues that the ALJ failed to explain the RFC assessment because he failed to provide specific references to evidence of record and failed to clearly explain his rationale. (*Id.* at 23–24, 31–33.) Second, Plaintiff argues that the ALJ improperly relied on the VE's testimony by not limiting the VE's assessment; according to the Plaintiff, the ALJ did not provide appropriate rationale to explain why the RFC assessment followed the VE's testimony even when Plaintiff raised certain factual issues with the VE's assessment. (*Id.* at 25–33.) Third, Plaintiff argues that the ALJ did not properly consider the Plaintiff's subjective testimony because the ALJ did not identify which "statements regarding intensity, persistence, and limiting effects are not entirely consistent' with which identified contradictory evidence." (*Id.* at 33–37.)

Defendant argues that substantial evidence on the record supports the ALJ's RFC assessment. (Def. Reply at 9.) Defendant argues that the ALJ fully articulated his rationale and

reasonably determined that additional limitations were not warranted by the evidence because the ALJ carefully reviewed and weighed the medical evidence, medical opinions, and subjective testimony in the case.  (*Id.* at 10–12.)  Defendant also argues that the ALJ was not required to include limitations that exceeded those the ALJ found supported by the record.  (*Id.* at 13.)  Finally, Defendant argues that the ALJ appropriately considered Plaintiff's subjective allegations of pain in accordance with controlling regulations.  (*Id.* at 14–15.)

An individual's RFC is an assessment of maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. 20 C.F.R. § 404.1545(a); SSR 96-8p.  The RFC assessment is an administrative finding and the ALJ alone is responsible for crafting a claimant's RFC.  *See* 20 C.F.R. §§ 404.1527(d)(2), 1546(c).  The Commissioner holds the burden to prove that the claimant can adjust to other work and that such other work exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g), 1560(c).  Importantly, the Commissioner must show that the claimant's RFC proves that the claimant can perform work that (a) involves doing significant and productive physical or mental duties (i.e., substantial) and (b) is done (or intended) for pay or profit (i.e., gainful). 20 C.F.R. § 404.1510, 1572.  Generally, a court should defer to the presiding ALJ when substantial evidence supports their conclusion. *See Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). As mentioned, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v.  Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

The ALJ spent six pages discussing the relevant medical evidence, medical opinions, and subjective testimony for the RFC assessment.  (A.R. 695–701.)  The ALJ considered various medical examinations, tests, and self-reported symptoms when considering the correct RFC assessment.  (*See, e.g. id.* at 260–266, 285, 313, 315, 316, 323, 325, 353, 522, 1128, 1136.)

Furthermore, the ALJ weighed evidence where necessary to resolve conflicting issues. With respect to the effects of physical and mental impairments, the ALJ chose to give little weight to the opinion of Plaintiff's acupuncturist (*Id.* at 698, 1472), partial weight to the state agency medical consultants (*Id.* at 89–102, 104–16, 698), little weight to a physician certification for medical marijuana (*Id.* at 698, 1246), great weight to the examining psychologist Dr. Ammamarie (*Id.* at 326–29, 700), little weight to therapist Bayuk (*Id.* at 700, 1511), and little weight to claimant's daughter's testimony (*Id.* at 212–19, 701).

The ALJ, in weighing the opinions, appeared to rely on the source's medical expertise, length of time treated, relevant facts known to the source, and the clarity of opinion. (*See* 698 – 701.) For example, the ALJ chose to give great weight to Dr. Ammamarie's examination because her examination was consistent with mental status examinations during the period at issue. (*Id.* at 326–29, 700.) Contrastingly, the ALJ gave little weight to the acupuncturist's and daughter's testimony: according to the ALJ, the acupuncturist's opinion was inconsistent with her own notes and the record as a whole, and the daughter could not opine on medical issues. (*Id.* at 212–19, 698, 701, 1472.) With a similar logic, the ALJ gave the state agency consultants partial weight because the consultants did not know of Plaintiff's recent circumstances. (*Id.* at 698.) The Court finds that a reasonable mind would understand the method the ALJ employed. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

As such, the Court finds that there is substantial evidence the ALJ properly considered the evidence. *Biestek*, 139 S.Ct. at 1154. Similarly, the Court will defer to the ALJ's decision on the weight of Plaintiff's subjective testimony.[11] *Id.*

## IV.  **CONCLUSION**

For the reasons set forth above, the Court finds that the ALJ's decision was supported by substantial evidence in the record.  Accordingly, the ALJ's decision will be **AFFIRMED**.


s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[11] Plaintiff cites an impressive number of cases to support her proposition that an RFC must give serious consideration to a claimant's subjective complaints of pain. *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65 (3d Cir. 1987); *Green v. Schweiker*, 749 F.2d 1066 (3d Cir. 1984); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983); *Dorf v. Bowen*, 794 F.2d 896 (3d Cir. 1986); *Metullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990); *Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir. 1987); *Mac v. Sullivan*, 811 F. Supp. 192 at 202 (E.D. Pa. 1993); *Taybron v. Harris*, 667 F.2d 412, 415, n.6 (3d Cir. 1981). Yet, the Plaintiff does not show the Court how the cited cases would change the outcome if properly considered. Since the Court is not obligated to make a party's argument on its behalf, the Court will abstain from discussing the cases .